**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANASTACIO HERNANDEZ,**

    **Petitioner,**

v.                                                                                          Case No.: 8:17-cv-913-T-27JSS
                                                                                            Criminal Case No.: 8:10-cr-62-T-27JSS
**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

## ORDER

**BEFORE THE COURT** are Petitioner Hernandez' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 1), his Memorandum in Support (cv Dkt. 2), and the United States' Motion to Dismiss (cv Dkt. 26). Upon review and following an evidentiary hearing (cv Dkt. 24), Hernandez' § 2255 motion is **DENIED**.

## BACKGROUND

In 2010, Hernandez was indicted and charged with one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (cr Dkt. 1). He pleaded guilty to the count pursuant to a written plea agreement. (cr Dkts. 217, 252). The plea agreement, as stipulated to by Hernandez at his change of plea hearing, reflected that from 2007 through the spring of 2009, he and other individuals conspired "to transport hundreds of kilograms of cocaine . . . from Houston, Texas, to various individuals located in the Middle District of Florida."[1] (cr Dkt. 217 at 17). His guilty plea was accepted as entered

---

[1] In October 2007, Hernandez was arrested while driving a vehicle as part of a caravan that was carrying cocaine. (cr Dkt. 217 at 19). He was convicted in the Eastern District of Texas of misprision of a felony. (cr Dkt. 228

1

knowingly and voluntarily, and he was adjudicated guilty. (cr Dkts. 226, 252 at 35-36). At sentencing, his counsel objected to the quantity of drugs included in the PSR, and the United States stipulated to a reduced amount of 50 to 150 kilograms. (cv Dkt. 1-1 at 3). With a total offense level 29 and criminal history category I, Hernandez' guidelines range was 87 to 108 months. (Id.). He was sentenced to 87 months imprisonment and five years of supervised release. (Id. at 10). Judgment was entered on December 16, 2015. (cr Dkt. 233). Hernandez did not file a direct appeal.[2] (cv Dkt. 1 at 3).

He filed this § 2255 motion in April 2017, more than one year after the deadline to file a notice of appeal had elapsed. (cv Dkt. 1). He raises three grounds for relief, including ineffective assistance of counsel for failure to move to dismiss the Indictment as barred by the statute of limitations and double jeopardy. (Id.). This Court held an evidentiary hearing on his claim in Ground Two that counsel did not file a notice of appeal as requested.[3] (cv Dkt. 24). Hernandez' testimony at the evidentiary hearing directly contradicted the allegations in his motion and memorandum, and this Court denied the claim, noting that a written order was forthcoming. (cv

---

¶ 31). The presentence investigation report (PSR) reflects that on November 24, 2008, he was sentenced to 21 months imprisonment and one year of supervised release, and that on September 2, 2009, he was deported. (Id.).

[2] As the plea agreement provided, Hernandez waived the right to appeal his sentence

> on any ground, including the ground that the Court erred in determining the applicable guidelines range . . . except (a) the ground that the sentence exceeds [his] applicable guidelines range as determined by the Court . . . ; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution . . . .

(cr Dkt. 217 at 14-15).

[3] An attorney was appointed to represent Hernandez at the evidentiary hearing. (cv Dkts. 7, 8, 24). No hearing is required to resolve Hernandez' remaining claims because the § 2255 motion "and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b).

Dkt. 21). The United States correctly contends that his remaining claims are untimely. (cv Dkt. 26). The claims are, in any event, without merit.

## STANDARD

To establish ineffective assistance of counsel, Hernandez must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Notably, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of the client." *Id.*

## DISCUSSION

In summary, Hernandez' claims in Grounds One and Three are untimely and, absent deficient performance and resulting prejudice, without merit. And Ground Two, on which an evidentiary hearing was held, does not entitle him to relief.

*Ground One*

In Ground One, titled "permission to proceed in forma pauperis, and permission to reopen Cas No: 8:10-CR-62T-27JSS-equitable tolling," Hernandez contends that his motion is timely and raises several claims of ineffective assistance of counsel. (cv Dkt. 1 at 4; cv Dkt. 2 at 2-8). The United States correctly contends that these claims are not timely.[4] They are also without merit.

I. Timeliness

The Antiterrorism and Effective Death Penalty Act imposes a one-year statute of limitations to file a § 2255 motion, which runs from the latest of "(1) the date on which the judgment of conviction becomes final . . . [or] (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). Hernandez does not dispute that he failed to file his motion within one year of when his judgment of conviction became final.[5] *See Adams v. United States*, 173 F.3d 1339, 1340-43 & 1342 n.2 (11th Cir. 1999).

---

[4] In its initial response, the United States acknowledged that Hernandez' motion was untimely but requested that his claim that counsel did not file a notice of appeal be granted to allow a belated appeal. (cv Dkt. 4 at 2, 5-6). This request was deemed a waiver of a limitations defense as to that specific claim, not as to the remaining claims. (cv Dkt. 7). Indeed, the United States further requested that Hernandez' remaining claims be dismissed without prejudice, which would have allowed him to raise the claims and the United States a possible limitations defense following the appeal. (Dkt. 4 at 5-6). Moreover, the statute of limitations "requires a claim-by-claim approach to determine timeliness." *Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017) (citations omitted).

Additionally, Hernandez had fair notice and an opportunity to present his position on timeliness, and he is not "significantly prejudiced by [any] delayed focus on the limitation issue." *Day v. McDonough*, 547 U.S. 198, 210 (2006) (citations omitted). He addressed timeliness and equitable tolling in his motion and was allowed to file a reply to the United States' response and motion to dismiss. (cv Dkts. 1, 2, 3, 21). Although the most recent order mailed to him was returned as "undeliverable," he was advised of the consequences of failure to inform the district court of a change of address, including dismissal for failure to prosecute. (cv Dkt. 3 at 2; cv Dkt. 23).

[5] Judgment was entered on the docket on December 16, 2015, and there was no direct appeal. (cr Dkt. 233). Although Hernandez does not include the date his § 2255 motion was placed in the prison mailing system, he signed the motion on April 12, 2017. (cv Dkt. 1 at 12).

4

Rather, he appears to argue that the limitations period started to run when he "found-out on March 07, 2017 that he could file a collateral attack, after he received his transcripts on March 07[,] 2017; the date on which the facts supporting the claim presented could have [been] discovered through the exercise of due diligence." (cv Dkt. 1 at 4). As for the delay in requesting the "transcripts," he explains that he "waited almost a year before he stared [sic] to request his transcripts" because counsel told him "that the appeal will take time at least one year, and that his attorney would file his notice of appeal." (cv Dkt. 2 at 8-9). Hernandez asserts that he "waited almost a full year, but his attorney failed to contact him. [He] had his family calling the Attorney, but all attempts failed." (Id. at 2). He also asserts that a law librarian took the transcripts and his memorandum for a few days. (Id.). Last, he claims he is not "a fast-learner, and verily understand his own language, his mind is very-slow, and has no knowledge in American-Jurisprudence." (Id. at 3).[6]

Notwithstanding his assertions, Hernandez has failed to establish that he filed his motion within one year of the date on which the facts supporting his claims could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(4). First, as discussed below, his testimony at the evidentiary hearing contradicts his allegation that he waited almost a year for counsel to pursue an appeal. Rather, he admitted that he did not request counsel to file an appeal, and accordingly, could not have been waiting for the appeal to proceed. In any event, he was

---

[6] In the "TIMELINESS OF MOTION" section of the prescribed § 2255 form, Hernandez states he was "sentenced on December 14, 2015. His Attorney was supposed to file a Notice of appeal, but he failed to do so, [Hernandez] requested his transcripts from this Honorable court but he did not receive[] his transcripts until March 07[,] 2017." (cv Dkt. 1 at 10). He does not specify when he requested his transcripts, whether from the district court or his family. (cv Dkt. 2 at 2).

5

advised at sentencing that he had 14 days to appeal.[7] Waiting nearly a year before discovering that an appeal had not been pursued indicates that he did not exercise due diligence.[8] And although he claims that he asked his family members to contact counsel, he does not support the assertion with factual detail, including when he made the request. (cv Dkt. 24 at 7; cv Dkt. 2 at 2).

Second, Hernandez does not explain why he could not seek collateral relief prior to obtaining the transcripts. If he is referring to the sentencing transcript in which the United States acknowledges that the conspiracy offense was factually related to his prior misprision of a felony conviction, *see* (cv Dkt. 1-1 at 6, 9), Hernandez was aware of the factual basis of the conspiracy offense and counsel's failure to move to dismiss the Indictment prior to obtaining the transcript. (cr Dkt. 217 at 17-19). And he was present at the sentencing with the assistance of an interpreter. *See Fultz v. United States*, No. 2:05cv175-MHT, 2006 WL 3832850, at *2-3 (M.D. Ala. Dec. 28, 2006) (finding sentencing transcript did not constitute "newly discovered evidence"). Moreover,

---

[7] The sentencing court explained:

> [T]o the extent permitted by your plea agreement, you have 14 days within which to appeal. You are entitled to be represented by an attorney. . . . The attorney will explain the advantages and disadvantages of the appeal. Listen carefully to the explanation, but it is your decision as to whether or not to appeal, but you must let him know within 14 days so he can file that or confirm in writing that you have decided to waive that right.

(cv Dkt. 1-1 at 11-12).

[8] As the Eleventh Circuit has instructed, a § 2255 motion "based on counsel's failure to file a requested direct appeal is considered timely under § 2255(f)(4) if the movant files within one year of discovering, through the exercise of due diligence, that counsel did not file the requested appeal." *Long v. United States*, 626 F.3d 1167, 1169 (11th Cir. 2010). If a petitioner was not diligent, courts must "speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Aron v. United States*, 291 F.3d 708, 711 n.1 (11th Cir. 2002). Here, Hernandez should have known immediately that no notice of appeal had been filed since none had been requested. At the latest, had he exercised due diligence, he would have discovered this within a few months following the deadline to file a timely notice. (cv Dkt. 24 at 5-6); *See, e.g.*, *Russaw v. United States*, No. 2:16-cv-8146-RDP, 2018 WL 2337301, at *4 (S.D. Ala. May 23, 2018); *Rubiano v. United States*, No. 6:16-cv-785-Orl-37DCI, 2017 WL 1653719, at * 3 (M.D. Fla. May 2, 2017); *Thomas v. United States*, No. 2:11-cv-8019-RDP, 2014 WL 4715861, at *7 (N.D. Ala. Sept. 22, 2014).

the content of the sentencing transcript relates only to Hernandez' double jeopardy claim. He does not explain why he was unable to raise the remaining claims prior to obtaining the transcript.

Hernandez' claim of equitable tolling is likewise without merit. If a motion is untimely, the limitations period can be tolled "where a petitioner untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with due diligence." *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007) (citations omitted). "The burden of establishing entitlement to this extraordinary remedy plainly rests with [Hernandez]." *Id.*

Even assuming counsel's alleged failure to file an appeal would constitute extraordinary circumstances, Hernandez' testimony contradicted his allegations. And he does not support his assertion that he instructed his family to contact counsel. Second, he fails to explain what due diligence he exercised in obtaining his transcripts. In any event, courts have found that delay in receiving a transcript is not a basis for equitable tolling. *See, e.g.*, *Fultz*, 2006 WL 3832850, at *4. Next, although he asserts that he is not a "fast-learner" and his mind is "very-slow," he does not connect these assertions to his inability to timely file. (cv Dkt. 2 at 3); *see Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) ("[M]ental impairment is not *per se* a reason to toll a statute of limitations. Rather, . . . the alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition."). And his remaining contentions do not support a finding of equitable tolling. *See Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013) ("An inability to understand English does not constitute extraordinary circumstances justifying equitable tolling. Furthermore, we have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion.").

Even crediting Hernandez' assertion that his transcript was taken from him, "wasting [a]

7

few days," and his memorandum was taken from individuals helping him, this accounts for only a few days in March and April 2017. (cv Dkt. 2 at 2). Hernandez filed his motion more than three months after the deadline had elapsed and, absent extraordinary circumstances and due diligence, equitable tolling is unavailable. The claims in Grounds One and Three in the motion are therefore untimely.[9]

## II. The Merits of Ground One

Even if not untimely, Hernandez' ineffective assistance of counsel claims are without merit. He raises the following claims: "(1) Violations of rule 16 Discovery, (2) Counsel's failure to file a Motion to Suppress Evince [sic], and to have a Pre-Trial prior to his guilty plea hearing, (3) Attorney Failure to file a Motion to Dismiss the Indictment under Rule 12(F), prior to guilty plea as requested by [Hernandez], (4) Attorney Fiilure [sic] to object, based on barred by the 5 years statute of limitations." (cv Dkt. 2 at 3). He also contends counsel was ineffective in not requesting a downward departure from the guidelines range based on his family circumstances. (Id. at 5). These contentions will be addressed in turn.

### 1. Rule 16 Discovery

Hernandez' contention that counsel was ineffective as to discovery is without merit. First, he provides no factual detail or authority to support his claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1999) (noting that conclusory, unsupported allegations are insufficient). And Rule 16 relates to discovery disclosures, including the material the government must provide on the defendant's request. Fed. R. Crim. P. 16. At his change of plea hearing, Hernandez confirmed

---

[9] Actual innocence provides an exception to the limitations period "when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) (citation omitted). Hernandez does not present evidence to support such a finding.

8

that he was satisfied with counsel's representation and had "a full opportunity to review the facts and the evidence . . . in consultation with [counsel]." (cr Dkt. 252 at 11-12). "There is a strong presumption that statements made during the plea colloquy are true," and Hernandez "bears a heavy burden to show that his statements under oath were false." *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007). It is unclear what additional discovery Hernandez seeks, and counsel is not ineffective in failing to raise an argument that has no legal basis. *Freeman v. Attorney General, State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008). Moreover, by pleading guilty Hernandez waived claims of pre-plea ineffective assistance of counsel. *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Accordingly, absent specific allegations or an indication on the record of ineffective assistance as to discovery, Hernandez fails to establish deficient performance, resulting prejudice, and ineffective assistance of counsel on this claim.

2. Motion to Suppress Evidence and Pre-Trial Hearing

Hernandez' contention that he requested counsel "to Move to Suppress Evidence . . . on grounds that title 18 U.S.C. § 3282(a) barred the indictment, since there is a gap of six years" is without merit. (cv Dkt. 2 at 10). Section 3282 provides that, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." However, as explained below, Hernandez' conviction did not violate the statute of limitations. Further, he waived claims of pre-plea ineffective assistance of counsel by pleading guilty, and a statute of limitations violation is not a basis to suppress or exclude evidence. *See United States v. Worth*, No. 1:15-CR-4-AT-GGB, 2015 WL 5970756, at *5 (N.D. Ga. Apr. 22, 2015), *report and recommendation adopted*, 2015 WL 5999322 (N.D. Ga. Oct. 14,

9

2015). Last, Hernandez fails to specify the nature of the evidence he sought to suppress or the basis to request a "pre-trial" prior to the change of plea hearing. He has not shown that any related hearing was warranted, and counsel was not ineffective in failing to raise this meritless claim. Accordingly, absent deficient performance and resulting prejudice, the ineffective assistance of counsel claim fails.

    3. Double Jeopardy

Hernandez' contention that his conspiracy conviction violates the double jeopardy clause is without merit. He contends that at sentencing, the United States

> recognized that this was the second time, [he] was doing time for the very same offense, back in 2008, when he served 21 Months imprisonment. [He was] deported in September 02, 2009, his conspiracy stop[p]ed, right then, and was not indicted until June 03, 2015, almost Six years later. . . . [N]ow he is back for the very-same-offense.

(Dkt. 2 at 4, 6). Rather, the United States explained at sentencing that "Hernandez has served some time already related to this as a mispris[i]on of a felony back in 2008," and that his

> incarceration for mispris[i]on of a felony in 2008 was the time that . . . he was no longer involved in this conspiracy. The conspiracy contained in the statement of facts continued up till . . . 2009. . . . [T]he conspiracy occurred from the spring of 2007 to the spring of 2009, and his involvement was from 2007 through 2008 when he was arrested and incarcerated.

(cv Dkt. 1-1 at 6, 9). When the sentencing court clarified that "[t]his is essentially a continuation of the same conduct, albeit a different conspiracy, but he has not been engaged in this activity since he was imprisoned," the United States confirmed "[t]hat's correct. He served time for that particular shipment, but he had involvement prior to that as well." (Id. at 9).

Even if the crimes were factually related, the double jeopardy inquiry is "whether each provision requires proof of an additional fact which the other does not." *United States v. Lee*, 785

10

F. App'x 667, 668-69 (11th Cir. 2019) (citations omitted). The analysis "focuses on the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial." *Id.* (citation omitted). Because the conspiracy offense required proof of additional facts which the misprision of a felony did not, the double jeopardy clause was not violated.[10] Counsel was not ineffective in failing to raise this meritless claim, and the claim is due to be denied.

    4. <u>Statute of Limitations</u>

Hernandez' contention that counsel was ineffective in failing to move to dismiss the Indictment for violating the applicable statute of limitations is likewise without merit. He reasons that the statute of limitations should apply because he was "doing time for the very same offense, back in 2008," and when he was deported on September 2, 2009, "his conspiracy sto[p]ped, right then, and was not indicted until June 03, 2015, almost Six years later." (cv Dkt. 2 at 4). He further "contends that he withdr[ew] from the conspiracy when he went to prison back in 2008." (Id. at 7-8). Elsewhere in his filings he asserts that "[t]he conspiracy stared [sic] in 2007 and ended-up in the late 2008. This conspiracy was final in the Spring of 2013." (Id. at 11).

In short, it is unclear when Hernandez contends the five-year statute of limitations under § 3282 began to run. In any event, his claim is without merit since, although he was not arrested until 2015, he was indicted and an arrest warrant was issued in 2010, within five years of the end of the conspiracy or any withdrawal. (cr Dkts. 1, 7, 204; cv Dkt. 2 at 10); *see United States v. Taylor*, 306 F. App'x 492, 494 (11th Cir. 2009) ("A statute of limitations is tolled by the timely

---

[10] The elements of misprision of a felony are: "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." *United States v. Brantley*, 803 F.3d 1265, 1276 (11th Cir. 2015) (citation omitted). "The elements of conspiracy to possess with intent to distribute drugs are (1) an agreement between two or more persons to commit a crime, and (2) the defendant's knowing and voluntary participation in the conspiracy." *United States v. Ohayon*, 483 F.3d 1281, 1292 (11th Cir. 2007) (citation omitted).

11

filing of an indictment, and a properly sealed indictment is timely even though the defendant is not arrested . . . until after the end of the statutory limitations period." (citation and internal quotation marks omitted)). Accordingly, counsel was not ineffective in failing to raise this meritless claim, and Hernandez' ineffective assistance of counsel claim is denied.

     5. Family Circumstances

Hernandez' contention that counsel was ineffective in failing to raise an objection or request "any kind of downward departure from the guidelines" based on his family circumstances is without merit. (cv Dkt. 2 at 5). He explains that he has "[f]our children and two grandchildren that depend on his support financially and emo[t]ionally. And according to the U.S.S.G. § 5K2.0 and family ties 5H1.6, could apply . . . since his record is clean, and the fact that [he] will be removed from this country at the end of his time." (Id.). He further contends that counsel "[f]ailed to investigate and do research" and did not present "mitigating evidence." (Id.).

Contrary to these assertions, the record reflects that at sentencing counsel noted that Hernandez "is a family man. In fact, his daughter is present in the courtroom. As the Court can see, he does have other family members that are in support of him." (cv Dkt. 1-1 at 5). Counsel further observed that Hernandez "has practically no criminal record," was "indigent . . . [and] doing some transporting to supplement his income, and he certainly knows that it was illegal and certainly accepts responsibility for his actions, but he was not . . . any type of leader or supervisor of any drug activity." (Id.). A sentence of 87 months was imposed, consistent with counsel's request for the low end of the guidelines range. (Id. at 4-6, 10).

Hernandez has not established that counsel's performance was deficient in failing to present additional information on, or conduct further investigation into, his family circumstances.

12

And there is no indication that additional presentation would have resulted in a lesser sentence, which would have constituted a variance below the guidelines range. Indeed, Hernandez' family situation was noted in the PSR, which was reviewed. (Id. at 2; cr Dkt. 228 ¶¶ 46, 48, 49). He does not identify other "mitigating evidence" that would have affected his sentence.[11] Absent deficient performance and resulting prejudice, this ineffective assistance of counsel claim is denied.

***Ground Two***

In Ground Two, Hernandez contends that counsel was ineffective in failing to file a notice of appeal. (cv Dkt. 1 at 5). In his motion, he alleged that

> right after [he] got sentence, spoke to his Attorney about the possibility to Appeal to the Eleventh Circuit, his Attorney told-him that it would take almost a year. But he said that he would file the notice of Appeal. An Appeal [was] never taken by the Attorney. Now [he] is requesting that he be allowed, to file a belate [sic]-appeal to the Eleventh Circuit.

(Id.; cv Dkt. 2 at 8-9). Notably, he does not claim that counsel failed to consult with him as to an appeal. In sum, based on his testimony at the evidentiary hearing, which contradicted his allegations, and the evidence presented by the United States, he is not entitled to relief on this claim.

An attorney's failure to file a notice of appeal as requested by a defendant constitutes deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). If a defendant does not instruct counsel to file an appeal or ask that an appeal not be taken, a court must determine whether counsel "consulted" with the defendant about an appeal, which means "advising the defendant

---

[11] Hernandez' reliance on U.S.S.G. § 5K2.0 and § 5H1.6 is misplaced. First, he does not specify any basis warranting a downward departure in § 5K2.0, a policy statement which "sets forth the standards for departing from the applicable guideline range based on offense and offender characteristics of a kind, or to a degree, not adequately considered by the [United States Sentencing] Commission." § 5K2.0 cmt. And § 5H1.6 provides, "[i]n sentencing a defendant . . . family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." Hernandez does not explain how this would affect his sentence.

13

about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. Counsel has a duty to consult "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Relevant factors include whether the defendant pleaded guilty, received the sentence bargained for, or waived his appellate rights. *Id.*

Hernandez' claim fails for several reasons. First, he has not shown that he requested counsel to file a notice of appeal. Significant to his claim, his testimony at the evidentiary hearing contradicted the allegations in his filings. For example, in his motion he alleged that "right after [he] got sentence, spoke to his Attorney about the possibility to Appeal . . . , his Attorney told-him that it would take almost a year. But he said that he would file the notice of Appeal." (cv Dkt. 1 at 5). And in his memorandum he asserted that "right after sentencing he spoke to his Attorney and told him that he wished to appeal his sentence." (cv Dkt. 2 at 8). However, at the hearing he testified unambiguously that after he was advised of his right to appeal, he did not tell counsel that he "wanted to appeal" and "did not ask him" to file an appeal.[12] (cv Dkt. 1-1 at 11-12; cv Dkt. 24 at

---

[12] Hernandez testified at the evidentiary hearing:

> Q. After you were sentenced and you had your conversation with your attorney, was it just he and you, or did you have the assistance of an interpreter?
> A. No. No. It was just here alone, here right next to me. After that, only he and I just chatted, talked.
> Q. What did you talk about?
> A. [A]fter I was sentenced, he talked to me about my right to appeal, and I asked him, "How did that work? How was that all about?" And then he talked to me about -- just about cooperation. And so I said that I wasn't -- I couldn't. And so that was all he said, and we left it at that right here.
> Q. You just said you asked him how your right to appeal worked. What do you mean?
> A. Well, to see how we would proceed and to know what to do next, but I didn't get a good answer, and he left it at that, and he left, and that was it.
> Q. But you just said that he talked to you about your right to cooperate, did you not?

14

11-14). His testimony further contradicts his allegations that he waited months for counsel to file an appeal. In short, his false allegations, which were made under penalty of perjury and are central to his claim, severely impugn his credibility and affect the weight accorded to his remaining testimony and allegations.[13]

In contrast, this Court also heard testimony from Hernandez' prior counsel, licensed as an attorney since 1977 and experienced in criminal prosecution and defense. (cv Dkt. 24 at 17-18). Based on his testimony, experience, and demeanor, this Court deems counsel a trustworthy witness and credits his testimony. *See Rivers v. United States*, 777 F.3d 1306, 1316-17 (11th Cir. 2015); *cf. Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1244 (11th Cir. 2010) ("The presumption that counsel's performance is reasonable is 'even stronger' when counsel is particularly experienced." (citation omitted)). Counsel testified that he understood his responsibility "to advise

---

. . .
A. Yes. He just mentioned that as to what -- about doing that, but we didn't really reach an agreement as to whether we would appeal or not. So that was -- that was all regarding the appeal.
. . .
Q. So you never told him that you wanted to appeal?
A. No, I did not, because he didn't ask me either.

(cv Dkt. 24 at 11-13). Hernandez acknowledged that he had signed his motion and memorandum under penalty of perjury. (cv Dkt. 24 at 13-14; cv Dkt. 1 at 12; cv Dkt. 2 at 13).

Hernandez further alleged and testified that his family members unsuccessfully attempted to contact counsel. (cv Dkt. 2 at 8; cv Dkt. 24 at 7). Counsel testified that he did not recall communications with Hernandez' family. (cv Dkt. 24 at 25-26). Notwithstanding, Hernandez fails to support his assertions with detailed factual support, including when he requested his family to call. In any event, he has not shown that counsel was aware of any such calls or that, regardless of whether he was or should have been aware, counsel's performance was deficient.

[13] There are additional reasons to doubt Hernandez' credibility. For example, he notes in his memorandum, filed prior to the United States' response, that his claim "only will bring expenses and inconvenience to the United States Marshalls [sic] Service, as well as the United States Attorney's (AUSA) Office, with [sic] must utilize its overstretched resources by having an Assistant United States Attorney respond to the motion and later prepare for and attend a hearing." (cv Dkt. 2 at 9). This language appears to have been taken from court orders that have allowed a belated appeal without an evidentiary hearing. *See, e.g.*, (cv Dkt. 4-2). This Court will not countenance allegations, later shown to be false, that are made to obtain an unwarranted belated appeal.

15

the client that he does have a right to appeal, and that a notice of appeal has to be filed within 14 days of sentence," and that where a defendant's plea agreement includes a "waiver-of-rights," he must "explain the effect of that. And in addition to explaining the rights, I give the client my opinion as to what I think his best avenue is." (cv Dkt. 24 at 18-19). He further testified that he "always" discusses appellate rights with defendants after sentencing, and that if the defendant insists on an appeal, he "will file the notice of appeal." (Id. at 19, 21).[14]

Although at the evidentiary hearing counsel could not recall specific conversations with Hernandez, and unfortunately no contemporaneous notes were taken, he testified that he would have explained "every provision of the plea agreement to [Hernandez] to make sure that he understood those provisions," including the appeal waiver and cooperation provisions. (Id. at 21, 23). And counsel's usual practice is consistent with his affidavit, in which he avers that

> Prior to [Hernandez'] plea proceedings, I explained and reviewed [his] appellate rights and viable arguments with him. After sentencing, I again discussed [his] appellate rights with him. [He] did not ask me to file a Notice of Appeal on his behalf. Had [he] requested me to file a Notice of Appeal, I would have done so, despite my professional judgment that [he] did not have any issues of arguable merit.

---

[14] Counsel explained,

> [I]n a case where a defendant pleads pursuant to a plea agreement, we have extensive discussions prior to the defendant entering a plea, because we are discussing his appellate rights. And in the course of representing him prior to sentencing, I generally have – I'm estimating, but I have more than one conversation with the client about his appellate rights, so that by the time we're at sentencing, I have a pretty good idea what the client wants to do. . . . And I follow up with discussing it with the client after sentencing.

(cv Dkt. 24 at 22). The United States contends that counsel's "habit" is relevant conduct under Rule 406 of the Federal Rules of Evidence, which provides that "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion [he] acted in accordance with that habit . . . ." (Id. at 41-42); *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985). Even if counsel's usual practice is not relevant, however, Hernandez has failed to establish that he is entitled to relief.

16

(cv Dkt. 4-1 ¶ 6). These unrefuted averments, made prior to the evidentiary hearing, confirm that Hernandez did not request counsel to file a notice of appeal and that counsel explained his appellate rights with him prior to the plea proceedings and after sentencing.[15]

In sum, Hernandez has not persuasively demonstrated that he requested counsel to file a notice of appeal. Additionally, there are several factors indicating that a rational defendant would not have wanted to appeal. First, consistent with the parties' recommendations, Hernandez received a sentence at the low end of the guidelines. (cv Dkt. 1-1 at 10). In fact, counsel corrected an error in the PSR that lowered his offense level by two levels, and Hernandez fails to identify any errors at sentencing. (Id. at 2-3). Second, he does not point to any nonfrivolous grounds for appeal, and his plea agreement included a broad appeal waiver. And although the United States noted at sentencing that there had not yet been cooperative efforts by Hernandez (cv Dkt. 1-1 at 7-8), the plea agreement nonetheless provided for a potential sentence reduction based on "cooperation . . . completed subsequent to sentencing," which could have been adversely affected by a frivolous appeal. (cr Dkt. 217 at 5).

---

[15] Hernandez testified that after sentencing he did not discuss with counsel his "appellate rights and how [his] cooperation efforts would affect that positively or negatively." (cv Dkt. 24 at 11). His testimony, however, appears to be contradictory. *See, e.g.*, (Id. at 12-13 ("[A]fter I was sentenced, [counsel] talked to me about my right to appeal"; "[Counsel] said it – 'Do you -- do you want to appeal?' So he -- he didn't ask me if I wanted to appeal.")). However, even if this testimony is credited and refutes counsel's averment that after sentencing they discussed the possibility of an appeal, Hernandez does not refute counsel's averment that they discussed the matter before the plea proceedings. Indeed, at his change of plea hearing, Hernandez confirmed that he read the plea agreement and discussed his options with counsel. (cr Dkt. 252 at 6, 11-12). Counsel added that he had "spent considerable time with Mr. Hernandez. I am fluent in Spanish and even though the plea agreement is in English, it was read to him by me in Spanish." (Id. at 8).

Hernandez testified at the evidentiary hearing that when he would "say something" to counsel in Spanish, counsel "would seem like he did not understand me well enough." (cv Dkt. 24 at 11). Counsel testified that he did not "recall any problems with communication." (Id. at 24). In any event, Hernandez did not raise this issue prior to the hearing, and he does not explain how it affected their discussion after sentencing. (cv Dkt. 24 at 11). And as noted, at his change of plea hearing he expressed his satisfaction with counsel's representation. (cv Dkt. 252 at 12).

Last, even if Hernandez reasonably demonstrated to counsel that he wanted to appeal by asking "how did that work," the record demonstrates that counsel satisfied his duty to consult with him about the advantages and disadvantages of an appeal and to make a reasonable effort to discover his wishes. (cv Dkt. 24 at 12). As discussed, counsel's usual practice was to have "extensive discussions prior to the defendant entering a plea, because we are discussing his appellate rights," and to have "more than one conversation with the client about his appellate rights, so that by the time we're at sentencing, I have a pretty good idea what the client wants to do." (Id. at 22). Hernandez acknowledged that counsel discussed an appeal as it related to cooperation after sentencing. (cv Dkt. 24 at 6, 12). And he failed to refute counsel's averment that counsel explained his appellate rights before the plea proceedings. (cv Dkt. 4-1 ¶ 6). Indeed, in his § 2255 motion, he does not raise a claim that counsel failed to consult with him about an appeal.

In summary, in light of Hernandez' contradictory allegations and testimony, counsel's testimony and unrefuted averments, and having assessed the respective credibility of the witnesses, this Court finds that Hernandez has failed to carry his burden to prove the claim in his § 2255 motion, specifically that he requested counsel to file a notice of appeal. *Beeman*, 871 F.3d at 1222-23. This Court further finds that, even if Hernandez reasonably demonstrated to counsel that he was interested in appealing, counsel satisfied his duty to consult with him. *See Otero v. United States*, 499 F.3d 1267, 1271 (11th Cir. 2007) (noting in similar case that no rational defendant would have taken an appeal and that the "only evidence relied upon by [the petitioner] to establish that he showed any interest in appealing is his own testimony at the evidentiary hearing" which was discredited by district court). Accordingly, absent deficient performance and ineffective assistance of counsel, Hernandez is not entitled to relief on Ground Two.

18

*Ground Three*

In Ground Three, Hernandez contends that counsel was ineffective in failing to file a motion to suppress evidence and dismiss the Indictment as barred by the statute of limitations. (cv Dkt. 1 at 6). He asserts that although he "explained" to counsel to file the motions "on grounds, that he already had served time for this charge, and the fact that he got deported on September 02, 2009," counsel did not raise these issues. (cv Dkt. 2 at 11). For the reasons discussed as to Ground One, these duplicative claims of ineffective assistance of counsel are untimely and without merit.

*Certificate of Appealability ("COA")*

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," which requires Hernandez to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (discussing standard for procedural rulings). I find that jurists of reason could not disagree with the resolution of Hernandez' constitutional claims or the procedural rulings, or conclude that the issues presented are adequate to deserve encouragement to proceed further. Because he has not met the required standard, he is not entitled to a COA and cannot appeal *in forma pauperis*.

## CONCLUSION

Petitioner Hernandez' § 2255 motion is **DENIED** (cv Dkt. 1), and the United States' Motion to Dismiss is **DENIED as moot**. (cv Dkt. 26). The Clerk is directed to enter judgment in the United States' favor and against Hernandez, and to **CLOSE** this case.

**DONE AND ORDERED** this 17th day of August, 2020.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record